INHABITANTS OF THE CITY OF HALLOWELL
*vs.*
INHABITANTS OF THE CITY OF PORTLAND.

Kennebec.    Opinion, May 21, 1942.

36

*Joseph B. Campbell,* for the plaintiffs.

*Barnett I. Shur,* for the defendants.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

HUDSON, J.   Report on agreed statement of facts.

This is a pauper action in which the plaintiffs seek reimbursement for money expended for relief of one Elmer Andrews and his family furnished from August 26, 1940 to December 31, 1940. Because of admissions, only one question is involved, the settlement of the pauper.

He was born in Portland on November 2, 1918, the legitimate son of Vernon and Winifred Andrews. His father had no pauper settlement in the state; his mother's was in Portland. In June, 1919, Elmer was emancipated by his father then having no settlement in the state, nor has the father since acquired one herein.

In both 1918 and 1919, the law as to the pauper settlement of legitimate children was as follows:

"Legitimate children have the settlement of their father, if he has any in the state; if he has not, they have the settlement of their mother within it; but they do not have the settlement of either, acquired after they are of age and have capacity to acquire one." Chap. 29, Sec. 1, Par. II, R. S. 1916. Also see Chap. 33, Sec. 1, Par. II, R. S. 1930.

Thus continued to be the law until it was amended by Chap. 203, Sec. 2, P. L. 1933, when as amended it read as follows:

"Legitimate children have the settlement of their father, if he has any in the state; if he has not, they shall be deemed to have no settlement in the state. . . ."

Whereas formerly a legitimate child of a father who had no pauper settlement in the state took derivatively that of his mother in the state, now such a child under such circumstances, because of the change in the statute, is a state pauper without settlement in the state. Relief furnished to a state pauper is reimbursable by the state as provided in Chap. 33, Sec. 25, R. S. 1930.

The question here is not what Elmer's settlement may formerly have been, but what it was in 1940 when these supplies were furnished by the plaintiffs. The repealing statute of 1933, supra, contained no saving clause, but on the other hand, in Sec. 4 of said Chap. 203, it was provided that "All acts and parts of acts inconsistent with this act are hereby repealed." Likewise, it is to be noted that the general statute as to statutes, Sec. 5 of Chap. 1, R. S. 1930, entitled "Construction and effect of repealing acts," has no application in this case.

This Court in *Lewiston* v. *North Yarmouth*, 5 Me., 66, stated in effect that while "The legislature has no power to disturb vested rights," it does have the right to establish rules for the settlement of paupers "as matters of mere positive or arbitrary regulation," and "is limited in its power only by its own perception of what is proper and expedient." It held that a law rendering valid a certain class of marriages, so far as it has a bearing upon questions of settlement under the pauper laws, for expenses incurred subsequent to its passage, is constitutional. The Court stated on page 69:

"So far therefore, as the resolve of March 19, 1821, has a bearing upon questions of settlement under our pauper laws for expenses incurred subsequently to its passage, we cannot doubt its constitutionality."

The effect of that decision is that towns do not have a vested right to have a particular pauper settlement continue to exist as is. This case was cited in *Inhabitants of Appleton* v. *City of Belfast*, 67 Me., 579, on page 581, in which the Court declared that "The legislature have the right to prescribe what may constitute a settlement, or, within reasonable limits, what shall be evidence of a settlement, *and may alter the law upon the subject from time to time.*" (Italics ours.)

It reaffirmed the principle established in the Lewiston case, supra, that the later act, although it changes the law of settlement, governs, where the relief is furnished subsequently

thereto, there being in such a case. no interference with a vested right.

In *Rangeley* v. *Bowdoin,* 77 Me., 592, 1 A., 892, 893, one who had his pauper settlement in the defendant town lost it by reason of a provision in a later statute that one living out of the town of his settlement for five successive years in any unincorporated place shall lose his town settlement. It was claimed that this statute effecting a change as to settlement was invalid, but the Court held otherwise, saying that the liability of towns to relieve and support paupers having no elements of contract, express or implied, rests solely in the positive and arbitrary provisions of statute, which the legislature may change as well as originally enact, citing *Lewiston* v. *Yarmouth,* supra, and *Appleton* v. *Belfast,* supra. The Court added: "Although the residence in the unincorporated place, which was the operating cause of losing the settlement in Bowdoin, was before the statute became operative, still the cause of action — which consisted in furnishing the supplies — arose thereafter." Also see *Portland* v. *Auburn,* 96 Me., 501, 502, 52 A., 1011.

Recently this Court in *Rockland* v. *Inhabitants of Lincolnville,* 135 Me., 420, 198 A., 744, 745, adjudicated a pauper settlement in accordance with the law as it was at the time of the furnishing of the supplies rather than what it had formerly been, relying upon *Appleton* v. *Belfast,* supra, and *Rangeley* v. *Bowdoin,* supra, and said: "The rights of parties are not to be governed by statutes which are repealed."

Thus, inasmuch as the pauper settlement in the case at bar must be determined in accordance with the law existing at the time the supplies were furnished, our conclusion is that Elmer Andrews, the pauper, at the time of relief being a legitimate child of his father who then had no pauper settlement in the state, (employing the language of the statute) must "be deemed to have" had "no settlement in the state."

*Judgment for defendants.*